Alright, we're back on the record. We now are for argument on Clifford Alan Brace and Ahn Brace v. Steven Speier, case number 1760032. And I know that we, I think previously, before we start the clock, and I think we have it set, that it was agreed that Amiki would have three minutes, is that correct? And so then that leaves 12 minutes. And so who's taking time out of rebuttal? I mean, The three minutes will come out of mine, Your Honor. I'd like to reserve And you're 12? Two minutes of my 12. Okay, so when you get, alright. Alright, so we have the clock at 12 here. And so Amiki, as I had indicated previously, I'll give you three minutes. So if he's taking, looks like he's taking more, that's because we have questions of him. So you'll get your three minutes. Or you could throw the water pot at him. Yeah. Alright, we're ready then. Good morning, Your Honors. Stephen Wade on behalf of the appellant. Your Honor, in the 40 years that I've practiced bankruptcy law, many, many times I've been called to give opinions and to intervene in matters involving family law. And I've always said that the intersection between family law and bankruptcy is a train wreck. The systems just simply don't play well together. And there's a reason for that, or multiple reasons for that. The first is that the family law system is, and community property in particular, isn't even based upon English common law. It's based upon Spanish law. And it's designed with a particular motivation. This was pointed out by the bankruptcy appellate panel in their decision in my brief. And that is to weigh and balance the respective rights of the spouses in that dissolution proceeding. And that's primarily the focus of family law. As a result, there are certain presumptions that we will be discussing, 760, as well as 25, excuse me, as well as 2581, regarding community property and the rights of the spouses thereto. Well, here, let's just kind of cut to it here. That if, if appellants argue that Valley did not reject application of the record title presumption under CEC section 662 in bankruptcy proceedings, how can we find, as you argue, that Valley does not apply to bankruptcy proceedings where it rejected the holding of a case in re-summers? And that was all about bankruptcy. Your Honor, it's not a, it is bankruptcy, but it's the rights of third parties versus the rights of spouses. Yeah, but it's a bankruptcy case. In the Valley case, there were two very important distinctions. First of all, they were dealing with personal property. And as a result, the how title to real property is taken was not under consideration there. They were talking about personal property. Secondly, they were talking about property which had been taken by one spouse as their sole and separate property, and whether or not the other spouse was entitled to an interest in that in connection with a dissolution proceeding. And as a result, the protection of the presumption of community property is to protect the innocent spouse from overreaching by the debtor spouse, by the non-title holding spouse. But when you take those two differences and you So why doesn't that statement compel us to decide this appeal against you? Your Honor, the Court of Appeals in Valley also said we need not and do not decide whether evidence code section 6062's form of title presumption ever applies in marital dissolution proceedings. I thought we were dealing with the Supreme, Cal Supremes in the Valley. We are. We are. And I'm saying that they, in that the presumption of 662 only applies to title taken to real property. They didn't address 662, and they say they didn't address 662. In a concurring opinion, they go so far as to say we don't address the situation of the rights of third parties to that marital property. All right. I've been in when I would check on it, it wasn't the majority holding. So how do you, you're arguing that what was said in the concurring position is therefore the majority holding? No, Your Honor. I'm saying that it's in line with the majority holding. The majority holding, which I read to you. The majority need to reach the question of what happens if an evidence code section 662 raises the other presumption. And the answer is Valley's silent on that issue. Valley didn't have to address that, specifically did not address that. And in fact, it was inapplicable to the facts in Valley because we were talking about a life insurance policy, not title to real property. Additionally, as I've indicated, we're dealing with joint tenancy property. They were not dealing with joint tenancy property. And joint tenancy property is a very specific, has very specific characteristics to it in state law, which go beyond any dissolution proceedings and the rights of the spouses between that. There's a case, which I did not cite in my brief because I was not, I didn't find it until recently, called Dieter versus Smith, 104 Calap 4th 645, a 2002 case. And in that case, it talks about the distinction between joint tenancy property and the rights of creditors against joint tenancy property, as opposed to the rights of creditors against property that's a judgment lien against one spouse who is a joint tenant on property. That lien only attaches to that spouse's interest in that joint tenancy property. Further, when that debtor spouse dies, that lien disappears. It goes away because it only attached to one spouse's interest in that, their 50% interest, because it was held in joint tenancy. If, the court points out, it is held as tenants in common, then you don't have the same result. In that case, the lien continues to hold on to the debtor spouse's tenants in common interest. The significance of that is huge. As is the bankruptcy appellate panel's decision in this case. And that is, it will, although the bankruptcy appellate panel said that we need clear rules of the road, by extending valley outside the circumstances of the facts in the case, and that is personal property and property which is held by one party. By extending that into real property and property held in joint tenancy, what it does is it completely muddies the waters. If the Cal Supremes had covered all of that, and it were on point, you couldn't have this argument, right? That's correct, your honor. But they, like this court and most courts of appeals, limit their decision to the facts involved in the case. They felt it was essential to criticize this court's ruling in Ray Summers. Because in Ray Summers was based essentially on two paths. The first is the path that says it's not subject to the interest of the creditors, the other half of the joint tenancy property. If you had to criticize Summers, that would be better for you, wouldn't it? Your honor, I think they felt they needed to because in addition to finding that the joint tenancy property was not property of this estate in its entirety, based upon the rights of creditors, etc., which is all laid out in Summers, Summers went on to say, and transmutation provisions of section 852 are satisfied by the manner in which title is taken. It was that provision of the Summers decision which they were critical of. If they hadn't criticized Summers, your argument would have to be stronger. The fact that they criticized Summers, then we've got to decide what are they saying there and whether the two can be reconciled and whether Summers is still good law, right? If they had not criticized Summers at all, yes, your honor. That's essentially where we sat at trial in this case. You don't have to reconcile the two, but the fact that they knew about Summers and they criticized Summers is not a positive for you. You know, the bankruptcy appellate panel essentially took the position, which I think is pretty uncontroverted, that the California Supreme Court, if you will, envisioned Summers as a house. They drove a bulldozer right through the middle of it. Some of it was taken out explicitly and expressly, but what was left was so fragile that it fell of its own accord. And that's basically what the bankruptcy appellate panel held. And I think what Judge Callahan was just asking you when they criticized it, they kind of brought the wind on that brought the rest of Summers down. And you're arguing, well, not really. Not at all, your honor. They were very specific in their Summers, based upon Summers finding that the provisions of the transmutation statute 852 did not apply in cases wherein there's a does not apply in cases wherein there is a they found that Summers did not apply because Summers said in cases where entitlement is taken from a third party, the transmutation statute does not apply. Well, they did more than they distinguish it. They criticized it. I think that in looking at the Summers decision, you have to remember now, a federal court, an article three federal court, whether it be a district court trying to opine what the Ninth Circuit might rule in an area where the Ninth Circuit hasn't ruled or the Ninth Circuit attempting to opine what the California Supreme Court or some other state Supreme Court might rule. When the actual court, whatever it might be, whether it be the Ninth Circuit in a district court situation or a state court, makes a ruling and then criticizes the ruling, that is that's not good. Because the best the best we can do is guess. We make the best guess. Well, Your Honor, and that's and that's in essence what the court did in Summers. It might be an educated guess, but it's a guess. In the Summers court, the court was called upon to rule on an issue of state law based upon state law that had not previously been ruled upon. I know, but they extrapolate from that, counsel. And in essence, what my argument, some substance of my argument is, is that it's now this court is now being asked to support the bankruptcy court. And the bankruptcy court's decision took valley and opened the door to it, in essence, both into bankruptcy, into, as I pointed out in my brief, into the effect of in probate proceedings, the rights of creditors, all the other conditions wherein spousal property and whether or not it's determined to be joint tenancy property or community property, wherein all of the rights of the party's third party to that are at issue. Now, if we open that up and extend that out. Unless my panel has further questions, we've already taken up all your time. So I'll give you the two minutes back for your rebuttal. All right. Thank you, Your Honor. Do you have any other questions? No, ma'am. Any other? Okay. Thank you. May it please the court. Good morning. Wayne Silver. I'm appearing as Amici Curia on behalf of the National Association of Consumer Bankruptcy Attorneys and the National Consumer Bankruptcy Rights Center. Your Honors, I think the Summers House is still standing. I think it can be reconciled with valley. And here's why. Summers applies in bankruptcy and valley applies in family court. The problem is when you try to switch them around. They make no sense in each other's courts. The family code cannot be picked apart. It has to be read holistically. Well, valley was a family law case. Yes, exactly. But we still have to ascertain what is California law in this case. And valley talks about Summers. And Summers was a bankruptcy case. Exactly, Your Honor. And I understand that. No, it's unfortunate. It would be easier if there was not some intersection. But look what happened in valley. The valley court had at its disposal the entire family code. And in the family code, there are provisions that counterbalance each other. So, for example, there's spousal support, there's credits, there's reimbursements. There are all of those things. And if you look at what the disposition of valley was, it went back to the appellate court to decide whether or not the spouse, who is now disentitled, was entitled to spousal support because she should have been the beneficiary on the insurance policy. But in the bankruptcy court, there is no such option. You can't just take one presumption out of the family code and put it into the bankruptcy court and say, that decides the issue and now we're done. Because if you do that, the disentitled spouse is going to come up and say, oh, hmm, I want to assert my right to spousal support. We're going to do a hypothetical divorce in the bankruptcy court. I have rights under the family code that I want to assert today in bankruptcy court. And the bankruptcy judge is going to look at this person, this lawyer, hopefully not me, and say, counsel, this isn't the family court and nobody's getting a divorce. There is no pending family court case. What are you talking about? You can't do that. We're just deciding an issue of property. The California Supreme Court can speak as to title and all of that in cases other than family law. Absolutely, Your Honor, of course. Of course they can. But that wasn't the issue precisely before them in this case. However, they recognized that there was, that the Ninth Circuit did have an intersection in this area, and they talked about how we didn't get it exactly right. What they talked about, Your Honor, was... On California law. Yes, and what they talked about was that the way the Ninth Circuit decided Summers was to talk about the fact that the transmutation statute did not apply in the context of title being acquired as joint tenancy. That was what they took issue with. And that, in the family court context, is the right decision. In the bankruptcy court context, it's a whole different kettle of fish. Because in the bankruptcy court context, there's all these other things that come with the family court presumption that don't go anywhere in bankruptcy court. So the spouse that has now lost the separate property character has no remedy. Okay, well, you're already over your time. But just go ahead, wrap it up in a minute. Well, Your Honor, I want to make the point that a bankruptcy court is a very different place than a family court. And in the bankruptcy court, in this particular case, there was no dispute between the spouses. There was no reason to say, we have to protect the spouse. We have to apply all those principles of the family code. We have to make sure there's no undue influence, which was very important to the valley court. None of those principles apply. And so this decision actually does injustice to both the policies that are underlying the family code and the bankruptcy code. Because the bankruptcy court is concerned with the rights of debtors and creditors and the right to a fresh start. And so this debtor is now confronted, if this court affirms race, with the prospect of having to say, hmm, if I file for bankruptcy, it's kind of like I'm getting a divorce. Because if I have joint tenancy property- Well, isn't the bankruptcy court also concerned with people putting property in certain, with certain way, designating the title in a way so that they can avoid the estate having access to it? Absolutely, Your Honor. And there could be people that do that fraudulently. And Your Honor, there are specific code sections in the bankruptcy code to address that. And those code sections have statutes of limitations. And so what happened in Brace is that they got to that issue years after they should have been able to. Because what you're talking about are avoidance powers. So if there's a fraudulent transfer issue, section 548. If it's a preference, section 547. You could even go under the California Uniform Voidable Transfer Act under 544. But there are statutes of limitations for all of those. This issue gives the trustee in bankruptcy no statute of limitations. I can simply say as trustee, you know, I think that that property, I think it's community property. We're going to have to get into all these other issues. We're going to have to see if there was undue influence. We're going to have to decide all sorts of questions that are unique to the family code when really it comes in as it comes in. And that's why in the bankruptcy court, evidence code section 662 should be the prevailing statute. Okay, thank you for your comment. Thank you very much. I appreciate it. Thanks for your time. Thank you. Good morning. Are you the only one speaking? Yes, Your Honor. Okay, yep. Good morning, and may it please the court, on behalf of the Appellee and Chapter 7 trustee Stephen Speier, Ed Hayes, and Judith Marshak of Marshak Hayes. Okay, you have 15 minutes. Thank you. Your Honor, I think that this case is very simple and straightforward. Property... Glad you do. Well, property... You may be the only person sitting up here that thinks that. I can't speak for my colleagues, but... Let me do what I can to persuade you. 541 of the bankruptcy code says that the bankruptcy estate property includes all interests of a debtor in property as of the petition date. And the bankruptcy code also specifically includes community property that has not yet been divided. And the Chapter 7 trustee, in essence, becomes the representative of the bankruptcy estate and stands in the debtor's shoes. So the question about whether something is an estate asset or not depends upon what the debtor's rights are in that property. And the trustee stands in those shoes to make that determination. So in this case, the debtor had fraudulently transferred title to three pieces of real property and the bankruptcy court concluded that after a trial. And there was no form of title presumption as of the petition date. The debtor had long since fraudulently conveyed that property. So the bankruptcy trustee avoids the transfer as fraudulent. And then the question becomes, what is the character of this property? Is it community property and therefore subject to the payment of community claims, which is what the family code section 910 says? I get, I get, excuse me, counsel, I, I want to be sure that I understand this. My understanding is that it's undisputed that the specific requirements for transmutation of the property were not met. That there was nothing in writing, which is, I mean, that, that basically they said they transmuted the property orally and that doesn't meet California's requirements. Is that right? That is correct, your honor. However, there is a distinction and a footnote I'd like to point out. And that is that these properties were acquired prior to 1985, which is when California amended family code section 852 to require the writing. So the oral would be sufficient if it took place. Correct. And the lower court found that there had been a fraudulent. Well, the lower court found that there was no transmutation agreement satisfied. The court heard evidence on it, viewed the credibility of the witnesses and found both Mr. And Mrs. Brace, who each had their day in court as defendants in this action and as an appellants in this proceeding. And the trial court did not believe a transmutation had ever took place. That issue and that conclusion is not being challenged on appeal. That's what I wanted to be sure. Yes. And so what is being challenged on appeal is basically the effect of it. In essence, what appellants would have this court do is write an exception to Valley. Valley says all property acquired during marriage is presumptively community unless the transmutation statutes apply. Valley specifically says as between spouses, we're not sure 662 of the evidence code ever comes into play, but it certainly does not when it conflicts with the transmutation requirements. So what appellants would have this court do is write an exception to the clear bright line rule established in Valley that you don't need a transmutation when property is acquired in the form of joint tenancy, because that in and of itself somehow magically transmutes the property into separate property interests of the spouses. It avoids the presumption, in other words. In essence, because then you're relying upon the evidence code section presumption that somehow. How would that go with fraud? Because, well, no, if they take it in joint tenancy, then they don't have to deal, they're asking to not have to deal with transmutation. But what if they took it, but what if they were doing it to fraudulently avoid? Is that. Well, let's. Accepting their view of what Valley says. Can you still, are they home free here because of the statute of limitations? I don't believe that's the case, Your Honor, because first you would have to go all the way back and find that acquisition, the form of title upon acquisition was controlling without compliance with the transmutation statutes, and Valley makes clear that that is not the law in California. Valley also acknowledged those specifically that in Ray Summers is a bankruptcy case. So how do you deal with the fact that the court's opinion and Valley recognize that their context is a marital dissolution case, which has different policy interests and different considerations, and that Summers, while they did criticize the broad statement in Summers concerning transmutation, they specifically recognize that that was in the given the fact that Valley was dealing with marital dissolution, they're not going to reach the question of evidence code section 662. But this presents a different situation because here we're squarely in bankruptcy land. But we're squarely in bankruptcy land, but it's the trustee standing in the debtor's shoes to assert property rights. But you're asking Valley to be extended to bankruptcy cases. Absolutely. I mean, which is Valley doesn't completely answer the question. So you're asking for you're asking for us to say this is what California this is what they would have said had they had this exact issue. That is correct, Your Honor. And the reason you kind of just have to make it. There's a difference between something leaves no wiggle room and something is you're asking us to interpret it in a way that goes a little further. And I understand your point, Your Honor, and I agree with your point. We have to extend Valley slightly, but not very far because the bankruptcy trustee is standing in the shoes of the debtor's spouse. But I think both Judge Wynn and Judge Cowan hit the nail on the head. Basically, what we're being asked to do by both parties is, although with different perspectives, obviously, is to do exactly what the Summers Court did. And that is to make an educated, I hate to use the term guess, although that's the term that's used in the law as to what the California Supreme Court would do under these circumstances. I agree. Absolutely. That's what both sides are asking the court to do. Now that we have Valley, what do we do with Valley in a bankruptcy case? What about certifying it to the California Supreme Court? Certainly, that could be done. I know it was recently done in the Reynolds case with regard to whether an interest in a spendthrift trust was property of the bankruptcy estate or not. And the Supreme Court accepted the certified question. So that is always going to be an option for you. But I don't think it's a very big leap or much of an extension to say that the bankruptcy debtor spouse's property rights are assets of the bankruptcy estate. Does Valley in any way address the situation of which presumption should trump when the husband and wife's interests are aligned? Because normally in marital dissolution proceedings, you're talking about a clash of interests, right? Innocent spouse needs to be protected. And that's a lot of what underlies the explanations in a lot of these family law cases. Distinction here is that in this bankruptcy context, it's really the debtor and the non-debtor spouse aligned against the bankruptcy trustee. So does Valley address that in any way? And where in the opinion can I look to for guidance on what the California Supreme Court would say about that? The Valley opinion does not specifically address that, Your Honor. However, what the Valley opinion says is that evidence code section 662 does not apply to satisfied. No, it says evidence code section 662's form of title presumption. We need not decide whether it applies in marital dissolution proceedings. So it doesn't address what happens if you take it out of the marital dissolution proceedings and all the implications involved in marital dissolution proceedings and you're putting it in the bankruptcy context. But to go back to your question also about where the interests of the spouses are aligned and not in conflict, both spouses had their day in court to present their testimony and to try to prove the character of this property. And the bankruptcy court found that they did not prove that this was separate property interest. The bankruptcy court specifically said that they did not do that. Their evidence was not credible and that they had failed. But did they get the 662 presumption? They did not get the 662 presumption. Right. Don't we have to figure that out? Well, and again, to the extent that the court is concerned that Valley doesn't go far enough and you're wanting to look at the 662 presumption, I again think it's important to keep in mind that property rights are determined as of a petition date in bankruptcy. And as of the petition date in bankruptcy, this property wasn't held in joint tenancy. I don't think 662 applies at all. This property had been fraudulent properties, plural, had been fraudulently conveyed by the debtor prior to bankruptcy. So where is the form of a state lawsuit? I guess. And then he defaulted in the lawsuit. So big judgment was correct. And so on the eve of the default judgment being entered, the debtor fraudulently transferred the his ownership interest in these properties to his spouse. So when he then later has the default judgment entered and then files bankruptcy, there is no 662 presumption to apply with respect to joint tenancy property that had already long since been transferred out of joint tenancy. The bankruptcy trustee then avoids and recovers the transfer that leaves the bankruptcy court with the challenge of determining the character of this property, which is not in joint tenancy because the debtor had transferred it out in the bankruptcy court. Then looking at all of the evidence, looking at what Valley says, looking at Valley's criticism of Summers that it's unpersuasive with respect to the only evidence that this is somehow separate property, not community property, was the form of title by which the spouses acquired the properties way back in the beginning. And that under those circumstances, the bankruptcy court did not find that to be credible evidence. And with or without a 662 presumption, the court found this was not separate property and that this was community property. What about the argument, counsel, that if we were to affirm, as you've argued, that essentially the sky is falling, which is what we heard from counsel for the appellant? And I don't believe that's the case at all, Your Honor. The law has not changed at all and would not change at all with respect to community property being subject to payment of community claims, which are claims that arose before or during marriage. Separate property of the non-debtor spouse is not liable for the claims of the community when that particular spouse that owns a separate property is not also liable on the debt. None of that has changed. The only thing that would potentially change is the holding in Summers. And that is when you're determining the character of the property in order to figure out does it go into the bucket of property that is subject to payment of creditor claims or does it go in the other bucket that's not, how do you do that? But the ultimate law has not changed at all. So in this case, the Supreme Court in Valley has made very, very clear a very bright line rule, a very easy rule to follow, that if it's acquired during marriage, it's community unless you comply with the transmutation statutes. And the form of title upon acquisition does not control and is not dispositive. So if you have spouses that own title as joint tenancy and they thought, oh, I wanted this to be separate property interest, they have a very easy fix. That's go comply with the transmutation statutes. And the law in California is very clear that transmutation statutes don't require anything fancy. It requires there to be some granting language where you clearly are conveying your interest away. And so parties can do that in a one-page agreement. Parties can record some new deed that takes it from joint tenancy to something more descriptive in the title. We're transferring our interest as community property to husband and wife who are married parties taking title as their sole and separate property. Very easy for people to comply with the transmutation statutes and get the result that the amici and that the debtors are arguing here. But what the debtors are wanting to do is get the benefit of a rule that has no more basis in law that there's some exception to property acquired during marriage is not community in the absence of complying with transmutation statutes. There's simply no such exception in the Family Code, nor should there be, because it leads to mischief. It leads to spouses coming up and saying things and retroactively changing their story. If somebody wants property to be transmuted, comply with the transmutation statutes. Very easy to do. You can get the result that you want. You still go after it as fraudulent, though, right? Correct, and there's actually California and circuit level decisions that say marital settlement agreements are subject to avoidance as fraudulent transfers. Court decisions dividing property are not subject to fraudulent transfers, but agreement between the spouses are. So if a spouse had title as community property or even joint tenancy and did some kind of a transmutation to change the character and make it the separate property of the spouse who doesn't have the creditor problems, now you've invoked the fraudulent transfer statutes and now these statutes of limitations might come into play as counsel suggested. But unless or until you get to the transmutation statutes and comply with those requirements, it's all presumptively community property. And I've got 30 seconds, so unless there's any other questions the Court has, I think I've probably used my time. There do not appear to be other questions. Thank you for your argument. Thank you, Your Honor. Two points. First of all, with respect to the character of the property as joint tenancy in terms of this case, the effect of the fraudulent conveyance decision was to reverse the transfer from joint tenancy into the trust and bring it back to where it was pro ante, which is joint tenancy. So what's good for the goose is good for the gander. They won the fraudulent conveyance action, which took it out of these trusts, but what it did is it returned it to its position pro ante, which is joint tenancy. And that's what the Court found. That's what the bankruptcy appellate panel appealed. The key really is the difference between the two courts, the two purposes. One is the rights of the parties in a domestic action between themselves. That's Valley. The other is rights of third parties, which is the whole panoply. What the Court indicated is my horrendous reasoning and how it would affect the administration of trusts and estates if we were to apply the presumptions in family court outside. It opens up the Pandora's box in terms of what creditors can seek to do, as I've indicated. And the impact to the unsuspecting community, which has taken title, and it's taken title hundreds of thousands of times in California as joint tenancy, believing that they were preserving each other's respective rights against the other person's creditors. Now this would throw that out the window as well. And you would have creditors coming in seeking to impose a judgment on joint tenancy property as to the entirety of the property, arguing Valley and Brace and saying those presumptions apply to third party disputes. And that's the Pandora's box that I'm concerned about. If you if in the absence of fraud, if there's fraud, all bets are off. Correct. And they should be, by the way. Correct. But in the absence of fraud, all these people have to do to avoid all the consequences that you're talking about is follow California's statute with regard to transmutation. Then they've protected their assets in the absence of fraud. In the absence of fraud in the beginning and in the absence of fraud now, because if they did it now, first of all, you're asking hundreds of thousands of unsuspecting couples who are holding property as joint tenancy with the expectations which have been in place throughout California case law. And I've gone through California case law. And at no time has the joint tenancy property of a non-debtor spouse been subjected to the debts of the debtor spouse. That's a solid rule in California that goes back into the 1930s. It's picked up in the Summers case. It is law on joint tenancy and the rights of third parties. You're appending that. Now, what do we do? Put out a notice in the newspapers and say, everybody who holds that, go down and change it and do a transmutation of your property or else you've now subjected the non-debtor spouse's interests. And if they do that. No. Well, no, but did, you know, I've let you go over. Yeah. Oh, yeah. I understand. Your Honor, just very quickly. You're already three minutes over. If the court has any. Yes, I agree with you. It did. Certification is a good idea, Your Honor. Thank you.
judges: Callahan, Nguyen, Ezra